UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

Setzer Properties ZWPO, LLC
354 Waller Avenue, Suite 200
Lexington, KY 40504,

        Plaintiff,

    v.                                          Case No. 17-CV-555

1848 Construction, Inc.
6607 University Avenue
Middleton, WI  53562,

Design Holdings, Inc.
6605 University Avenue
Middleton, WI  53562,

James L. Anderson
5223 Buttonbush Drive
Fitchburg, WI  53711,

Brad M. Crowley
2946 Tracy Lane
Stoughton, WI  53589,

Michael G. Zingg
712 SE Jackson Park Road
Troutdale, OR  97060, and

David B. Gildersleeve
730 NE 6th Street
North Bend, WA  98045,

        Defendants.

---

**COMPLAINT**

---

Plaintiff Setzer Properties ZWPO, LLC states the following for its Complaint against Defendants 1848 Construction, Inc., Design Holdings, Inc., James L. Anderson, Brad Crowley, Michael G. Zingg, and David B. Gildersleeve:

## THE PLAINTIFF, DEFENDANTS, AND A RELATED NON-PARTY

1.      Plaintiff Setzer Properties ZWPO, LLC ("Setzer Properties") is a limited liability company organized under the laws of Kentucky.  Its sole member is Brett T. Setzer, a natural person domiciled in the State of Kentucky.

2.      Defendant 1848 Construction, Inc. ("1848 Construction") is a business corporation organized under the laws of Wisconsin.  Its principal office is located at 6607 University Avenue, Middleton, Wisconsin 53562.  Its registered agent is James L. Anderson, 6607 University Avenue, Middleton, Wisconsin 53562.

3.      Defendant Design Holdings, Inc. is a business corporation organized under the laws of Wisconsin.  Its principal office is located at 6605 University Avenue, Middleton, Wisconsin 53562.  Its registered agent is James L. Anderson, 6605 University Avenue, Middleton, Wisconsin 53562.

4.      Defendant James L. Anderson ("Anderson") is a natural person.  On information and belief, he is domiciled in the State of Wisconsin and resides at 5223 Buttonbush Drive, Fitchburg, Wisconsin 53711.

5.      Defendant Brad M. Crowley ("Crowley") is a natural person.  On information and belief, he is domiciled in the State of Wisconsin and resides at 2946 Tracy Lane, Stoughton, Wisconsin 53589.

6.     Defendant Michael G. Zingg ("Zingg") is a natural person.  On information and belief, he is domiciled in the State of Oregon and resides at 712 SE Jackson Park Road, Troutdale, Oregon 97060.

7.     Defendant David B. Gildersleeve ("Gildersleeve") is a natural person.  On information and belief, he is domiciled in the State of Washington and resides at 730 NE 6th Street, North Bend, Washington 98045.

8.     Non-Party Design Structures, LLC ("Design Structures") is a dissolved limited liability company organized under the laws of Wisconsin.  Its principal office is located at 6605 University Avenue, Middleton, Wisconsin 53562.

9.     Design Structures is, or was, a member-managed limited liability company.  Beginning on or around June 1, 2009, its membership units were held by Defendants Zingg (60%), Anderson (20%), Crowley (10%), and Gildersleeve (10%).  Design Structures, however, redeemed Mr. Gildersleeve's units in 2015.  Since then, its membership units have been held by Zingg (66.67%), Anderson (22.22%) and Crowley (11.11%).

10.     On information and belief, Design Structures had three offices prior to its dissolution: its principal office in Middleton, Wisconsin, and two secondary offices in Oregon.

## JURISDICTION AND VENUE

11.     Plaintiff Setzer Properties is a citizen of Kentucky because its sole member is a natural person domiciled in the State of Kentucky.

12.     Defendants 1848 Construction, Design Holdings, Inc., Anderson, and Crowley all are citizens of Wisconsin.  Both 1848 Construction and Design Holdings, Inc. are Wisconsin business corporations with their principal places of business in Dane County, Wisconsin.  Both Anderson and Crowley are natural persons domiciled in Dane County, Wisconsin.

13.     Defendant Zingg is a citizen of Oregon because he is a natural person domiciled in the State of Oregon.  Zingg is subject to personal jurisdiction in the State of Wisconsin because Plaintiff's claims against Zingg arise from his conduct as a member-manager of Design Structures, as well as Design Structures' activities while he was a member-manager of the company.

14.     Defendant Gildersleeve is a citizen of Washington because he is a natural person domiciled in the State of Washington.  Gildersleeve is subject to personal jurisdiction in the State of Wisconsin because Plaintiff's claims against Gildersleeve arise from his conduct as a member-manager of Design Structures, as well as Design Structures' activities while he was a member-manager of the company.

15.     Plaintiff seeks judgments exceeding $75,000 against each of the Defendants.

16.     The district courts of the United States have original jurisdiction over this civil action under 28 U.S.C. § 1332(a)(1).

17.     Under 28 U.S.C. § 1391(b)(2), venue is proper in the United States District Court for the Western District of Wisconsin because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Dane County, Wisconsin.

18.     In the alternative, venue is proper in the United States District Court for the Western District of Wisconsin under 28 U.S.C. § 1391(b)(3) because each Defendant is subject to this Court's personal jurisdiction with respect to this action.

## FACTS

**I.      Setzer Properties Accrues a Breach-of-Contract Claim Against Design Structures, Which Ultimately Results in a $1.5 Million Judgment.**

19.     Plaintiff Setzer Properties entered into a contract with Non-Party Design Structures on or around January 17, 2014.

QB\164177.00002\46308021.5

20.     Pursuant to that contract, Design Structures served as the general contractor for a project to build a FedEx Ground distribution facility in Portland, Oregon.

21.     By spring 2015 at the latest, and on information and belief earlier, Design Structures and its member-managers were aware of substantial cost overruns and other problems on the Portland, Oregon project for which Design Structures served as general contractor.

22.     By spring 2015 at the latest, and on information and belief earlier, Design Structures and its member-managers also were aware that, in light of the cost overruns and other problems on the Portland, Oregon project, Setzer Properties had a substantial claim against Design Structures for breach of the contract between those parties.

23.     On April 6, 2016, Setzer Properties filed a lawsuit against Design Structures in an Oregon state court, alleging breach of contract and seeking $1,500,000 in compensatory damages.

24.     On May 3, 2016, the Circuit Court for Multnomah County, Oregon, entered a $1,500,000 judgment against Design Structures, and in favor of Setzer Properties.

25.     A certified copy of Setzer Properties' judgment against Design Structures is attached here as Exhibit 1.

26.     In January 2017, Setzer Properties' judgment against Design Structures was domesticated in Dane County, Wisconsin, and docketed by the Dane County Clerk of Circuit Court.

27.     When Setzer Properties accrued its $1.5 million claim against Design Structures, Defendants Anderson, Crowley, Zingg, and Gildersleeve were Design Structures' four member-managers.

28.     On information and belief, Anderson and Crowley operated out of Design Structures' principal office in Middleton, Wisconsin.

29.     On information and belief, Zingg and Gildersleeve operated out of Design Structures' secondary offices in Oregon.

30.     Beginning in the spring of 2015, Anderson, Crowley, Zingg, and Gildersleeve responded to Setzer Properties' $1.5 million claim by embarking on a series of actions designed to ensure that they extracted the maximum value possible from Design Structures, and that no part of Setzer Properties' claim would ever be paid.

31.     These actions are described in Parts II, III, and IV below.

II.     **In Response to Setzer Properties' Claim, Design Structures' Member-Managers Terminate Design Structures' Oregon Operations, Write Off Their Personal Debts to the Company, and Use Design Structures' Assets to Repay the Personal Debts They Owe to Each Other and Third Parties.**

   A.     **Anderson, Crowley, Zingg and Gildersleeve Write Off Gildersleeve's Debt to Design Structures and Use Design Structures' Assets to Repay Gildersleeve's Personal Debt to Zingg.**

32.     Gildersleeve's employment with Design Structures was voluntarily or involuntarily terminated in the spring of 2015.

33.     On information and belief, Gildersleeve's employment was terminated because of Setzer Properties' claim against Design Structures, or because of the underlying problems that resulted in Setzer Properties' claim.

34.     On information and belief, in either the spring or summer of 2015, Anderson, Crowley, Zingg, and Gildersleeve decided to terminate Gildersleeve's ownership interest in Design Structures.

35.     On information and belief, taking into account the claim Setzer Properties had accrued against Design Structures, the sum of Design Structures' debts exceeded the value of its assets at the time Gildersleeve decided to terminate his ownership interest in Design Structures.

36.     Gildersleeve's ownership interest in Design Structures had little or no value at the time Gildersleeve sought to terminate it.

37.     Anderson, Crowley, Zingg, and Gildersleeve caused Design Structures to pay Gildersleeve $113,665 to redeem his ownership interest in the company.

38.     The $113,665 price that Design Structures paid to Gildersleeve was not intended to represent the value of Gildersleeve's membership units in the company.

39.     Anderson, Crowley, Zingg, and Gildersleeve calculated the $113,665 as a function of what Gildersleeve needed to repay outstanding debts that he owed to Design Structures and Zingg.

40.     At the time, Gildersleeve personally owed $94,375 to Design Structures.

41.     At the time, Gildersleeve also personally owed $26,291 to Zingg.

42.     As part of its 2015 redemption of Gildersleeve's membership units, Design Structures wrote off the $94,375 debt that Gildersleeve owed to the company.

43.     Design Structures paid the remainder of its $113,665 purchase price by agreeing to pay Zingg approximately $19,290 of the debt that Gildersleeve owed to him.

44.     Design Structures made this payment to Zingg in December 2015, partly in cash and partly by writing off debt that Zingg owed.

45.     As a consequence—in "return" for surrendering his largely valueless membership units in Design Structures—Gildersleeve avoided his $94,375 debt to the company, as well as $19,290 of his debt to Zingg.

QB\164177.00002\46308021.5

46. By cooperating in making these transfers to Gildersleeve, Zingg benefited from the $19,290 paid by Design Structures on a debt that Zingg otherwise would have had to collect from Gildersleeve.

47. The transfer of this $113,665, from Design Structures to Gildersleeve and Zingg, deprived Design Structures of assets that otherwise would have been available to Setzer Properties, as Design Structures' creditor.

**B.      Anderson, Crowley, and Zingg Terminate Design Structures' Oregon Operations, Continue Paying Zingg a Salary Anyway, and Use Design Structures' Assets to Pay Down a Personal Debt That Zingg Owed to a Third Party.**

48. On information and belief, around the time Gildersleeve terminated his ownership interest in Design Structures, Anderson, Crowley, and Zingg decided to terminate Design Structures' Oregon operations altogether and to end Zingg's involvement in the company.

49. In June of 2015, Design Structures liquidated most of the operating assets used in its Oregon operations.

50. This June 2015 liquidation represented the effective end of operations in the Oregon offices run by Zingg.

51. Anderson, Crowley, and Zingg caused Design Structures to pay Zingg approximately $13,000 a month for his purported services in June, July, August, September, October, November, and December of 2015.

52. Throughout 2015, Anderson, Crowley, and Zingg also used Design Structures' assets to make monthly loan payments on a personal debt that Zingg owed to a non-party, Ronald Schmidt.

53. Design Structures had no liability on Zingg's personal debt to Mr. Schmidt.

-8-

54.     Throughout 2015, Anderson, Crowley, and Zingg caused Design Structures to pay Mr. Schmidt approximately $2,200 a month on behalf of Zingg.

55.     Anderson, Crowley, and Zingg even caused Design Structures to make these $2,200 monthly payments to Mr. Schmidt in January and February 2016—after Design Structures ceased paying Zingg for any purported services to the company.

56.     By making payments on Zingg's personal debt to a third party, Anderson, Crowley, and Zingg deprived Design Structures of assets that otherwise would have been available to Setzer Properties, as Design Structures' creditor.

**C.      Anderson, Crowley, and Zingg Write Off Crowley and Anderson's Personal Debts to Design Structures, as Well as a Large Debt Owed by Defendant Design Holdings, Inc., which Anderson, Crowley, and Zingg Also Owned.**

57.     Like Gildersleeve, Crowley and Anderson both owed personal debts to Design Structures.

58.     Late in 2015, the amount of Crowley's personal debt to Design Structures was approximately $79,558.

59.     On or around November 30, 2015, Anderson, Crowley, and Zingg instructed Design Structures' controller to remove Crowley's debt from Design Structures' books.

60.     On information and belief, Design Structures received no value from Crowley in return for writing off his personal debt to the company.

61.     By writing off Crowley's $79,558 debt, Anderson, Crowley, and Zingg deprived Design Structures of assets that otherwise would have been available to Setzer Properties, as Design Structures' creditor.

62.     Late in 2015, the amount of Anderson's personal debt to Design Structures was approximately $24,999.

-9-

63.     On information and belief, Anderson's debt to Design Structures stemmed from work Design Structures had done on Anderson's personal house, for which Anderson had not paid the company.

64.     On or around November 30, 2015, Design Structures' controller reclassified the $24,999 as a "draw" taken by Anderson and wrote off the debt.

65.     At all times material to this Complaint, the member-managers of Design Structures also were the stockholders of Defendant Design Holdings, Inc.

66.     Further, those individuals owned stock in Design Holdings, Inc. in exact proportion to their membership interests in Design Structures.

67.     As of December 2015, Design Holdings, Inc. was indebted to Design Structures in the net amount of approximately $640,926.

68.     On information and belief, Design Holdings, Inc.'s debt to Design Structures stemmed mostly from debt payments that Design Structures' member-mangers routinely caused Design Structures to make on behalf of Design Holdings, Inc.

69.     On information and belief, Design Structures had no liability on the loan (or loans) that its member-mangers caused Design Structures to pay for the benefit of Design Holdings, Inc.'s behalf.

70.     On or around December 31, 2015, Anderson, Crowley, and Zingg caused Design Structures to write off the debt owed by their other company, Defendant Design Holdings, Inc.

71.     On information and belief, Design Structures received no value from Design Holdings, Inc. in return for writing off the net $640,926 of debt that it owed to Design Structures.

72.     By writing off the net $640,926 of debt owed by Design Holdings, Inc., Anderson, Crowley, and Zingg deprived Design Structures of assets that otherwise would have been available to Setzer Properties, as Design Structures' creditor.

73.     The sum of Design Structures' debts exceeded the value of its assets when Anderson, Crowley, and Zingg caused Design Structures to write off the debts owed by Anderson, Crowley, and Design Holdings, Inc.

74.     On information and belief, in approximately August or September 2015, Design Structures also had begun failing to pay debts that it owed to subcontractors and suppliers.

## III.    Anderson and Crowley Partner with Two Design Structures Employees to Continue Profiting from Design Structures' Ongoing Operations in Wisconsin, But Under the False Guise of a Forming a "New" Corporation.

75.     Although Gildersleeve and Zingg decided (either voluntarily or involuntarily) to terminate Design Structures' Oregon operations and to end their involvement in the company, none of Design Structures' member-managers ever intended to terminate Design Structures' operations in Wisconsin.

76.     Throughout 2015, Anderson, Crowley, and Zingg understood that Design Structures had value as a going concern.

77.     Throughout 2015, Anderson, Crowley, and Zingg understood that Design Structures' Wisconsin-based assets had greater value as components of Design Structures' going concern than they would if sold for their liquidation value.

78.     Anderson and Crowley wished to continue Design Structures' ongoing Wisconsin operations and to continue profiting from those ongoing operations.

79.     Anderson and Crowley, however, wished to capture the full value of Design Structures' ongoing operations—without sharing any of that value with Design Structures' creditor, Setzer Properties.

-11-

80. Anderson and Crowley "solved" this problem by forming a new corporation in November 2015, for the purpose of diverting Design Structures' ongoing operations to it.

81. The corporation Anderson and Crowley organized is Defendant 1848 Construction.

82. Anderson and Crowley organized 1848 Construction with two other employees of Design Structures.

83. On information and belief, Anderson owns 57% of 1848 Construction's stock, and Crowley owns 29% of it. The remaining 14% is owned by the other two employees of Design Structures who joined Anderson and Crowley in organizing 1848 Construction.

84. Anderson is employed as 1848 Construction's CEO. Crowley is employed as its President.

85. 1848 Construction's other two stockholders are employed, respectively, as 1848 Construction's Vice President and Director of Field Operations.

86. Anderson, Crowley, and the other two Design Structures employees caused 1848 Construction's articles of incorporation to be filed on or around November 19, 2015.

87. At that time, Design Structures had secured three contracts for large projects.

88. Late in November 2015—shortly after 1848 Construction was incorporated— Design Structures also secured two additional contracts for large projects.

89. Design Structures expected all five of these contracts to be profitable.

90. Anderson and Crowley wished to reap the profits from Design Structures' five contracts, but did not wish to do so through Design Structures, since that would have exposed the profits to Design Structures' creditors, including Setzer Properties.

-12-

91.     On or around January 1, 2016, Anderson and Crowley, with the cooperation of Zingg, therefore caused Design Structures to assign all five of the contracts over to 1848 Construction.

92.     On information and belief, Design Structures received approximately $80,000 from 1848 Construction in consideration for assigning these five contracts.

93.     However, on information and belief, Design Structures paid approximately $200,000 *to 1848 Construction* to cover construction costs that 1848 Construction incurred after taking assignment of the five contracts.

94.     Thus, Design Structures not only assigned the five contracts to Anderson and Crowley's "new" company, it also effectively paid 1848 Construction to take assignment of the contracts.

95.     On information and belief, 1848 Construction profited from the five contracts that Design Structures assigned to it.

96.     On information and belief, Design Structures did not profit from the five contracts it assigned to 1848 Construction.

97.     At the time Anderson and Crowley incorporated 1848 Construction, Design Structures also was party to approximately 16 smaller contracts.

98.     With Zingg's cooperation, Anderson and Crowley caused Design Structures to subcontract all the work on these remaining contracts to 1848 Construction, which received payment for that work through Design Structures.

99.     On information and belief, 1848 Construction profited from the work that Design Structures subcontracted to it.

100.    On information and belief, Design Structures did not profit from the work it subcontracted to Design Structures.

101.    Between assigning its five large contracts and subcontracting the work on its 16 smaller contracts to 1848 Construction, Design Structures transferred all its ongoing operations to 1848 Construction shortly after 1848 Construction was incorporated.

102.    In this way, and in others as stated below, 1848 Construction is merely a continuation of Design Structures, under the guise of being a "new" and separate entity.

103.    Around the time it transferred all of its ongoing operations to 1848 Construction, Design Structures also sold all, or nearly all, of its remaining tangible operating assets to 1848 Construction.

104.    On information and belief, Design Structures received only liquidation value in the sale of its tangible operating assets to 1848 Construction.

105.    1848 Construction further "hired" all, or nearly all, of Design Structures' remaining employees.

106.    And, 1848 Construction "opened" and began operating in Design Structures' principal office in Middleton, Wisconsin.

107.    1848 Construction's principal office is, and always has been, the same office suite that Design Structures called its principal office before transferring its ongoing operations to 1848 Construction.

108.    1848 Construction also took possession of Design Structures' electronic and paper records, which had value to the going concern.

109.    Design Structures' electronic and paper records are being kept by 1848 Construction's controller—and, on information and belief, other 1848 Construction employees— at 1848 Construction's principal office.

110.    1848 Construction's controller formerly had been Design Structures' controller— until 1848 Construction "hired" him (along with Design Structures' other remaining employees) early in 2016.

111.    On information and belief, all of Design Structures' customer information and other proprietary information was transferred to 1848 Construction along with Design Structures' operations, employees, office space, and records.

112.    On information and belief, in running their "new" company, 1848 Construction, Anderson and Crowley have sought to benefit from—and in fact have benefited from—the goodwill that Design Structures built up through its years of operation.

113.    On information and belief, Anderson and Crowley represented to Design Structures customers—including the customers whose contracts were assigned to 1848 Construction—that 1848 Construction was essentially a continuation of Design Structures.

114.    Shortly after they incorporated 1848 Construction, Anderson and Crowley caused 1848 Construction to create a web site that referenced 1848 Construction's "years of industry experience."

115.    Further, an entire paragraph of 1848 Construction's new home page was cribbed nearly verbatim from Design Structure's home page.  At the time it transferred its ongoing operations to 1848 Construction, Design Structures' home page stated in part:

> Our Clients are most often busy business owners, executives, and managers. They find this single-source of accountability for all aspects of the commercial building process invaluable. It allows them to devote less time to analyzing, supervising and maintaining their facilities project and

more time to do what they do best – manage and operate a successful business.

116.    Early in 2016, the following paragraph then appeared on 1848 Construction's first home page:

> Our clients are most often busy business owners, executives and managers. They find this single-source of accountability for all aspects of the design and construction process invaluable. It allows them to devote less time to analyzing, supervising and maintaining their construction project and provides them with more time to do what they do best – manage and operate a successful business.

117.    Even 1848 Construction's current website includes a customer endorsement that touts "years" of experience with the ostensibly new corporation:

> "I have partnered with 1848 Construction on over a dozen projects in the past few years. Their no-nonsense approach to construction allows me to essentially give them projects and avoid the hassle of bidding out to several general contracts. I know they competitively bid out the trades and always look out for my best interest."
>
> *- Steve Doran, CRX, CCIM, Founding Principal, Galway Companies*

(Projects, https://1848construction.com/projects/ (last visited July 18, 2017)).

118.    On information and belief, Design Structures received no value from 1848 Construction in consideration for transferring its valuable contract rights, good will, proprietary information, and other intangible assets to 1848 Construction.

119.    By transferring all of its existing operations—including its valuable contract rights, operating assets, customer relationships, employment relationships, office space, proprietary information, and good will—to 1848 Construction, Anderson, Crowley, and Zingg deprived Design Structures of assets that otherwise would have been available to Setzer Properties, as Design Structures' creditor.

-16-

**IV.    Having Transferred All of Design Structures' Ongoing Operations to 1848 Construction, Anderson, Crowley, and Zingg Dissolve Design Structures and Liquidate Its Non-Operating Assets to Pay Off Bank Debt That They Had Personally Guaranteed.**

120.    Anderson, Crowley, and Zingg turned Design Structures into a non-operating shell by transferring all its operations to 1848 Construction in January 2016.

121.    On or around January 22, 2016, Anderson, Crowley, and Zingg therefore caused Design Structures to file articles of dissolution.

122.    Thereafter, Anderson, Crowley, and Zingg liquidated Design Structures' remaining (non-operating) assets and used the proceeds to pay off bank debt that Anderson, Crowley, and Zingg had personally guaranteed.

123.    By the end of 2016, Anderson, Crowley, and Zingg had succeeded in fully paying off Design Structures' bank debt.

124.    By the end of 2016, the only significant assets and liabilities that remained on Design Structures' books all were related to Setzer Properties, or to the Portland, Oregon project that gave rise to Setzer Properties' claim against Design Structures.

125.    In sum, beginning in late 2015, Anderson, Crowley, and Zingg erected an artificial legal wall between Design Structures' valuable assets and its $1.5 million liability to Setzer Properties.

126.    As described above, Anderson, Crowley, and Zingg transferred all of Design Structures' valuable assets—and Design Structures' operations generally—to Anderson and Crowley's "new" company, 1848 Construction.

127.    But as also described above, Anderson, Crowley, and Zingg left Design Structures' $1.5 million liability to Setzer Properties in the shell company they had emptied to enable 1848 Construction's creation.

-17-

128.    On information and belief, Anderson, Crowley, and Zingg took all these actions with the intent to hinder Setzer Properties from collecting any portion of the $1.5 million debt owed to it by Design Structures.

129.    On information and belief, Anderson and Crowley further took their actions with the intent to profit from the value of Design Structures' ongoing operations without having to share any such value with Design Structures' creditor, Setzer Properties.

### Count One:  Successor Liability (Against 1848 Construction, Inc.)

130.    Setzer Properties restates and incorporates by reference its allegations in the paragraphs above.

131.    Anderson and Crowley—as well as the two other Design Structures employees who organized 1848 Construction—knew of Setzer Properties' claim against Design Structures when they incorporated 1848 Construction.

132.    Anderson and Crowley incorporated 1848 Construction for the purpose of transferring Design Structures' ongoing operations to 1848 Construction.

133.    Almost immediately after organizing 1848 Construction, Anderson and Crowley, with the cooperation of Zingg, did in fact transfer all of Design Structures' ongoing operations to 1848 Construction, along with the contract rights, operating assets, office space, employment relationships, proprietary information, records, goodwill, and other intangible assets that were being used in Design Structures' ongoing operations.

134.    Design Structures ceased to exist as a going concern after Anderson and Crowley transferred its ongoing operations and associated assets to 1848 Construction.

135.     Anderson and Crowley took all these actions for the purpose of benefiting from Design Structures' ongoing operations while preventing Setzer Properties from collecting on its substantial claim against Design Structures.

136.     1848 Construction is merely a continuation of Design Structures.

137.     In the alternative, the transactions between Design Structures and 1848 Construction amount to a *de facto* merger of the two companies.

138.     The transactions between Design Structures and 1848 Construction also represent a fraudulent attempt to escape liability for Design Structures' obligations to Setzer Properties.

139.     1848 Construction has successor liability for Setzer Properties' $1.5 million judgment against Design Structures.

### Count Two:  Piercing the Company Veil (Against Anderson, Crowley, and Zingg)

140.     Setzer Properties restates and incorporates by reference its allegations in the paragraphs above.

141.     Even before Setzer Properties accrued its claim against Design Structures, Anderson, Crowley, and Zingg failed to treat Design Structures as an entity with any separate existence of its own.

142.     Even before Setzer Properties accrued its claim against Design Structures, Anderson, Crowley, and Zingg used Design Structures' assets to loan money to another corporation they owned, Design Holdings, Inc., to loan money to themselves, and to perform construction work on one of their personal residences for no compensation.

143.     After Setzer Properties accrued its claim against Design Structures, Anderson, Crowley, and Zingg continued in their failure to treat Design Structures as an entity with any separate existence of its own.

QB\164177.00002\46308021.5

144.   Rather, Anderson, Crowley, and Zingg consistently treated Design Structures' assets as their own personal assets.

145.   Anderson, Crowley, and Zingg wrote off Gildersleeve's personal debt to Design Structures and used Design Structures' assets to repay Gildersleeve's personal debt to Zingg.

146.   Anderson, Crowley, and Zingg used Design Structures' assets to make loan payments on a personal debt that Zingg owed to a third party.

147.   Anderson, Crowley, and Zingg wrote off the personal debts that Anderson and Crowley each owed to Design Structures.

148.   Anderson, Crowley, and Zingg wrote off the debt owed to Design Structures by another company they owned, Design Holdings, Inc.

149.   Anderson and Crowley conspired with Zingg to transfer all of Design Structures' ongoing operations to Anderson and Crowley's new corporation, 1848 Construction.

150.   Anderson and Crowley conspired with Zingg to transfer to 1848 Construction all the valuable contract rights, operating assets, office space, employment relationships, proprietary information, records, goodwill, and other intangible assets that were being used in Design Structures' ongoing operations.

151.   On information and belief, Design Structures received only liquidation value in the transfer of its tangible operating assets to 1848 Construction.

152.   On information and belief, Design Structures received no value whatsoever for the transfer of its valuable contract rights, proprietary information, goodwill, and other intangible assets to 1848 Construction.

153.    In all these transactions, Design Structures had no separate mind, will or existence of its own—its finances, policy, and business were dominated completely by Anderson, Crowley, and Zingg and were subverted completely to their personal interests.

154.    Anderson, Crowley, and Zingg took all the actions alleged above for the purpose of fraudulently escaping liability for Design Structures' obligations to Setzer Properties.

155.    Justice and equity require that Design Structures' company veil be pierced and that Anderson, Crowley, and Zingg be held liable for Design Structures' debt to Setzer Properties.

### Count Three:  Fraudulent Transfer Under Wis. Stat. §§ 242.04(1)(a)-(b) and § 242.05(1) (Against 1848 Construction, Inc.)

156.    Setzer Properties restates and incorporates by reference its allegations in the paragraphs above.

157.    Anderson, Crowley, and two other Design Structures employees incorporated 1848 Construction on November 19, 2015.

158.    On or around January 1, 2016, Design Structures assigned 1848 Construction all its rights under five valuable contracts.

159.    1848 Construction paid no value to Design Structures for that assignment. Rather, Design Structures ultimately made net cash payments *to* 1848 Construction in connection with the assignment.

160.    In or around January 2016, Design Structures also transferred to 1848 Construction all its proprietary information, goodwill, and other intangible assets.

161.    On information and belief, 1848 Construction paid no value to Design Structures for the transfer of these assets.  On information and belief, 1848 Construction paid only the liquidation value of Design Structures' tangible operating assets.

-21-

162.    These transfers to 1848 Construction were fraudulent under Wis. Stat. § 242.05(1) because Design Structures made them without receiving a reasonably equivalent value in exchange, and Design Structures was insolvent at that time or became insolvent as a result of the transfers.

163.    The transfers to 1848 Construction also were fraudulent under Wis. Stat. § 242.04(1)(a) because Design Structures made the transfers with the actual intent to hinder, delay, or defraud Setzer Properties in connection with Setzer Properties' claim against Design Structures.

164.    Design Structures' actual intent to hinder, delay, or defraud Setzer Properties is evidenced by the facts that the transfers were made to an insider, that the transfers were not disclosed to Setzer Properties, that Design Structures was threatened with suit before the transfers were made, that the transfers involved substantially all of Design Structures' assets, that the value of the consideration received by Design Structures was not reasonably equivalent to the value of the assets transferred, and that Design Structures either was insolvent or became insolvent shortly after the transfers.

165.    The transfers to 1848 Construction further were fraudulent under Wis. Stat. § 242.04(1)(b) because Design Structures made the transfers without receiving reasonably equivalent value in exchange, and Design Structures intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

**Count Four:  Fraudulent Transfer Under Wis. Stat. §§ 242.04(1)(a)-(b) and § 242.05(1)**
**(Against Design Holdings, Inc.)**

166.    Setzer Properties restates and incorporates by reference its allegations in the paragraphs above.

-22-

167.    At all times material to this Complaint, the member-managers of Design Structures also were the stockholders of Design Holdings, Inc.

168.    As of December 2015, Design Holdings, Inc. owed to Design Structures a net debt of $640,926.

169.    This debt arose from payments that Design Structures' member-managers routinely caused Design Structures to make on behalf of Design Holdings, Inc.

170.    On or around December 31, 2015, Design Structures wrote off the debt that Design Holdings, Inc. owed to it.

171.    This transfer was fraudulent under Wis. Stat. § 242.05(1) because Design Structures made the transfer without receiving a reasonably equivalent value in exchange, and Design Structures either was insolvent at that time or became insolvent as a result of the transfer.

172.    The transfer also was fraudulent under Wis. Stat. § 242.04(1)(a) because Design Structures made the transfer with the actual intent to hinder, delay, or defraud Setzer Properties in connection with Setzer Properties' claim against Design Structures.

173.    Design Structures' actual intent to hinder, delay, or defraud Setzer Properties is evidenced by the facts that the transfer was made to an insider, that the transfer was not disclosed to Setzer Properties, that Design Structures was threatened with suit before the transfer was made, that the value of the consideration received by Design Structures was not reasonably equivalent to the value of the asset transferred, and that Design Structures either was insolvent or became insolvent shortly after the transfer.

174.    The transfer further was fraudulent under Wis. Stat. § 242.04(1)(b) because Design Structures made the transfer without receiving reasonably equivalent value in exchange,

-23-

and Design Structures intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

## Count Five:  Fraudulent Transfer Under Wis. Stat. §§ 242.04(1)(a)-(b) and § 242.05(1) (Against James Anderson)

175.    Setzer Properties restates and incorporates by reference its allegations in the paragraphs above.

176.    In late 2015, Anderson personally owed Design Structures a debt of $24,999, stemming from work Design Structures had done on Anderson's personal house, for which Anderson had not paid Design Structures.

177.    On or around November 30, 2015, Design Structures wrote off Anderson's personal debt and "reclassified" it as a draw taken by Anderson.

178.    This transfer was fraudulent under Wis. Stat. § 242.05(1) because Design Structures made the transfer without receiving a reasonably equivalent value in exchange, and Design Structures either was insolvent at that time or became insolvent as a result of the transfer.

179.    The transfer also was fraudulent under Wis. Stat. § 242.04(1)(a) because Design Structures made the transfer with the actual intent to hinder, delay, or defraud Setzer Properties in connection with Setzer Properties' claim against Design Structures.

180.    Design Structures' actual intent to hinder, delay, or defraud Setzer Properties is evidenced by the facts that the transfer was made to an insider, that the transfer was not disclosed to Setzer Properties, that Design Structures was threatened with suit before the transfer was made, that the value of the consideration received by Design Structures was not reasonably equivalent to the value of the asset transferred, and that Design Structures either was insolvent or became insolvent shortly after the transfer.

-24-

181.    The transfer further was fraudulent under Wis. Stat. § 242.04(1)(b) because Design Structures made the transfer without receiving reasonably equivalent value in exchange, and Design Structures intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

### Count Six:  Fraudulent Transfer Under Wis. Stat. §§ 242.04(1)(a)-(b) and § 242.05(1) (Against Brad Crowley)

182.    Setzer Properties restates and incorporates by reference its allegations in the paragraphs above.

183.    In late 2015, Crowley personally owed to Design Structures a debt of $79,558.

184.    On or around November 30, 2015, Design Structures removed Crowley's personal debt from its books.

185.    This transfer was fraudulent under Wis. Stat. § 242.05(1) because Design Structures made the transfer without receiving a reasonably equivalent value in exchange, and Design Structures either was insolvent at that time or became insolvent as a result of the transfer.

186.    The transfer also was fraudulent under Wis. Stat. § 242.04(1)(a) because Design Structures made the transfer with the actual intent to hinder, delay, or defraud Setzer Properties in connection with Setzer Properties' claim against Design Structures.

187.    Design Structures' actual intent to hinder, delay, or defraud Setzer Properties is evidenced by the facts that the transfer was made to an insider, that the transfer was not disclosed to Setzer Properties, that Design Structures was threatened with suit before the transfer was made, that the value of the consideration received by Design Structures was not reasonably equivalent to the value of the asset transferred, and that Design Structures either was insolvent or became insolvent shortly after the transfer.

188.     The transfer further was fraudulent under Wis. Stat. § 242.04(1)(b) because Design Structures made the transfer without receiving reasonably equivalent value in exchange, and Design Structures intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

**Count Seven:  Fraudulent Transfer Under Wis. Stat. §§ 242.04(1)(a)-(b) and § 242.05(1)**
**(Against Michael Zingg)**

189.     Setzer Properties restates and incorporates by reference its allegations in the paragraphs above.

190.     In December 2015, Design Structures paid Zingg $19,290 as partial payment of a personal debt owed to Zingg by Gildersleeve.

191.     Design Structures' Oregon operations ceased by June 2015, yet Zingg continued to receive $13,000 each month for alleged serves performed in June, July, August, September, October, November, and December of 2015.

192.     Throughout 2015, Design Structures also paid $2,200 each month toward a personal debt that Zingg owed to a third party.

193.     In January and February of 2016, even after Design Structures had formally dissolved, Design Structures made two additional payments of $2,200 toward Zingg's personal debt to the third party

194.     These transfers were fraudulent under Wis. Stat. § 242.05(1) because Design Structures made the transfers without receiving a reasonably equivalent value in exchange, and Design Structures either was insolvent at that time or became insolvent as a result of the transfers.

195.     The transfers also were fraudulent under Wis. Stat. § 242.04(1)(a) because Design Structures made the transfers with the actual intent to hinder, delay or defraud Setzer Properties in connection with Setzer Properties' claim against Design Structures.

196.     Design Structures' actual intent to hinder, delay, or defraud Setzer Properties is evidenced by the facts that the transfers were made to an insider, that the transfers were not disclosed to Setzer Properties, that Design Structures was threatened with suit before the transfers were made, that the value of the consideration received by Design Structures was not reasonably equivalent to the value of the assets transferred, and that Design Structures either was insolvent or became insolvent shortly after the transfers.

197.     The transfers further were fraudulent under Wis. Stat. § 242.04(1)(b) because Design Structures made the transfers without receiving reasonably equivalent value in exchange, and Design Structures intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

## Count Eight:  Fraudulent Transfer Under Wis. Stat. §§ 242.04(1)(a)-(b) and § 242.05(1) (Against David Gildersleeve)

198.     Setzer Properties restates and incorporates by reference its allegations in the paragraphs above.

199.     At the time Gildersleeve terminated his ownership interest in Design Structures, Design Structures' debts exceed its assets, making Gildersleeve's ownership interest of little to no value.

200.     In exchange for terminating his ownership interest in Design Structures, Gildersleeve received $113,665.

201.     $94,375 of the $113,665 payment to Gildersleeve was used by Design Structures to write off a debt that Gildersleeve personally owed to Design Structures.

202. $19,290 of the $113,665 payment to Gildersleeve was used by Design Structures to pay off a debt that Gildersleeve personally owed to Zingg.

203. These transfers were fraudulent under Wis. Stat. § 242.05(1) because Design Structures made the transfers without receiving a reasonably equivalent value in exchange, and Design Structures either was insolvent at that time or became insolvent as a result of the transfers.

204. The transfers also were fraudulent under Wis. Stat. § 242.04(1)(a) because Design Structures made the transfers with the actual intent to hinder, delay, or defraud Setzer Properties in connection with Setzer Properties' claim against Design Structures.

205. Design Structures' actual intent to hinder, delay, or defraud Setzer Properties is evidenced by the facts that the transfers were made to an insider, that the transfers were not disclosed to Setzer Properties, that Design Structures was threatened with suit before the transfers were made, that the value of the consideration received by Design Structures was not reasonably equivalent to the value of the assets transferred, and that Design Structures either was insolvent or became insolvent shortly after the transfers.

206. The transfers further were fraudulent under Wis. Stat. § 242.04(1)(b) because Design Structures made the transfers without receiving reasonably equivalent value in exchange, and Design Structures intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

**Count Nine:  Enforcement of Claim Under Wis. Stat. § 183.0909(2) (Against Anderson, Crowley, and Zingg)**

207. Setzer Properties restates and incorporates by reference its allegations in the paragraphs above.

208.    On information and belief, Design Structures' assets have been distributed in liquidation.

209.    Anderson, Crowley, and Zingg are Design Structures' current members, and were Design Structures' members at the time of its liquidation.

210.    The transfers described in Count Five through Count Seven above constitute distributions made to Anderson, Crowley, and Zingg in the liquidation of Design Structures.

211.    Under Wis. Stat. § 183.0909(2), Setzer Properties' claim and judgment against Design Structures is enforceable against Anderson, Crowley, and Zingg in the amount of the liquidating distributions they received.

**Count Ten:  Breach of Fiduciary Duty (Against Anderson, Crowley, and Zingg)**

212.    Setzer Properties restates and incorporates by reference its allegations in the paragraphs above.

213.    Anderson, Crowley, and Zingg never intended to terminate Design Structures' operations as a going concern.  Instead, they conspired to ensure that Design Structures' operations as a going concern would continue under the guise of a "new" corporation, 1848 Construction, Inc.

214.    In the alternative, if Design Structures did cease to be a going concern, Anderson, Crowley, and Zingg assumed fiduciary duties to Design Structures' creditors, including Setzer Properties.

215.    If Design Structures ceased to be a going concern, Anderson, Crowley, and Zingg breached their fiduciary duties to Design Structures' creditors by intentionally transferring the entirety of Design Structures' ongoing operations—including its contract rights, tangible operating assets, customer and other proprietary information, goodwill, and other intangible

assets—in exchange for only the liquidation value of Design Structures' tangible operating assets.

216.    Such breach injured Setzer Properties in an amount to be determined at trial.

WHEREFORE, Plaintiff Setzer Properties ZWPO, LLC demands judgment as follows:

A.    Count One (Successor Liability):

1.    Judgment against Defendant 1848 Construction, Inc. in the amount of $1,500,000, plus statutory interest and costs.

2.    An award of Plaintiff's costs and expenses in this action, and such other relief as may be just and equitable.

B.    Count Two (Piercing the Company Veil):

1.    Judgment against Defendants James L. Anderson, Brad M. Crowley, and Michael G. Zingg in the amount of $1,500,000, plus statutory interest and costs.

2.    An award of Plaintiff's costs and expenses in this action, and such other relief as may be just and equitable.

C.    Count Three through Count Eight (Fraudulent Transfers):

1.    Judgment under Wis. Stat. § 242.07(1)(a) against Defendants 1848 Construction, Inc., Design Holdings, Inc., James L. Anderson, Brad M. Crowley, Michael G. Zingg, and David B. Gildersleeve, avoiding the transfers described in Count Three through Count Eight above as necessary to satisfy Setzer Properties' judgment against Design Holdings.

2.    An award of Plaintiff's costs and expenses in this action, and such other relief as may be just and equitable.

D.    Count Nine (Enforcement of Claim Under Wis. Stat. § 183.0909(2)):

1.      Judgment against Defendants James L. Anderson, Brad M. Crowley, Michael G. Zingg in the amount of the distributions each received in the liquidation of Design Structures' assets.

2.      An award of Plaintiff's costs and expenses in this action, and such other relief as may be just and equitable.

E.      Count Ten (Breach of Fiduciary Duty):

1.      Judgment against Defendants James L. Anderson, Brad M. Crowley, and Michael G. Zingg in an amount to be determined at trial.

2.      An award of Plaintiff's costs and expenses in this action, and such other relief as may be just and equitable.

Dated this 19th day of July, 2017             QUARLES & BRADY LLP


 *s/ Emily Logan Stedman*
Matthew J. Splitek (SBN 1045592)
Emily Logan Stedman (SBN 1095313)
33 East Main Street, Suite 900
Madison, Wisconsin 53703
Telephone: (608) 283-2454
matthew.splitek@quarles.com
emily.stedman@quarles.com

*Attorneys for Plaintiff*

QB\164177.00002\46308021.5